

28 Liberty Street, 30th Floor • New York, NY 10005

Telephone: (212) 300-0375 • Facsimile: (212) 481-1333 • www.fslawfirm.com

April 21, 2021

**VIA CM/ECF**
Hon. Ramon E. Reyes, Jr., U.S.M.J.
United States District Court for the
Eastern District of New York
225 Cadman Plaza East, Room N208
Brooklyn, New York 11201

Re:   *Millin v. Brooklyn Born Chocolate et al.*, No: 1:19-cv-3346 (RER)

Dear Judge Reyes,

We represent the Plaintiff in the above referenced matter. We write to respectfully request judicial approval of the Parties' settlement agreements attached hereto as **Exhibit ("Ex.") A**. The agreement resolves the claims of Plaintiff Darnell Millin ("Millin") and Opt-in Plaintiffs Alexandra Rodriguez, Vincent Pappalardo, Stephania Ariza, Argenis Domigues-Ortiz, Brandon Scales, Betsaida Hdez. De Melo, Daisy Scales, Mirella Vaquero, Jazzman Smith, Vladymir Carl Theodore, Jasmin Rendon, Petra Vaquero, Elizabeth Flores, Zaida Pujols, Marcelino Disla, and Justin Manswell (together with Millin "Plaintiffs") for the total amount of $102,000.00. As part of this motion, Plaintiffs will request 1/3 in attorney's fees ($34,000) plus costs ($10,390.93) from the total settlement amount. For the reasons outlined below, the Court should approve the settlement as a fair and reasonable compromise of Plaintiffs' claims against Defendants.

**BACKGROUND & PROCEDURAL HISTORY**

Fitapelli & Schaffer, LLP ("F&S") was retained by Millin, who was employed as a maintenance worker at Brooklyn Born Chocolate, located at 815 Martin Street, Rahway, New Jersey 07065. On May 7, 2019, F&S sent a demand letter on behalf of Millin to Defendants advising them of claims of various wage and hour violations and inviting a pre-litigation response. After the parties were unable to reach a settlement through prelitigation discussions, Millin filed this action on June 5, 2019. *See* ECF No. 1.

Millin alleged that Defendants, who own and operate Brooklyn Born Chocolate violated the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and New Jersey Wage and Hour Law ("NJWHL") because they: (1) failed to pay premium overtime compensation; (2) failed to pay spread of hours; and (3) failed to provide accurate time of hire notices and wage statements. *Id.* Defendants filed their answer on August 12, 2019. *See* ECF No. 17. On May 26, 2020, the Court granted Plaintiffs' motion to certify an FLSA Collective Action, allowing Millin to send notice of the lawsuit to maintenance workers, packaging workers, delivery workers,

kitchen staff and all other similarly situated hourly employees to Plaintiff in the action. Following this, 16 individuals opted into the action as party plaintiffs.

Following the close of the opt-in period, the Parties decided to pursue private mediation to settle this matter. Before the mediation the parties engaged in informal discovery, and over the next several weeks, the Parties exchanged employment records and damages calculations. On January 27, 2021, the Parties attended a mediation with Ruth Raisfeld, Esq., a respected wage and hour mediator, where the Parties were able to reach a settlement in principle. In the following weeks negotiated and drafted Settlement Agreements for each Plaintiff. *See* **Ex. A**.

## THE SETTLEMENT SHOULD BE APPROVED

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *See* 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015); *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Mosquera v. Masada Auto Sales, Ltd.*, No. 09 Civ. 4925, 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019).

The court in *Wolinsky* set forth the following criteria for determining whether a proposed settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335. Based on the above criteria, the proposed settlement, which provides for the payment of $102,000.00 to the Plaintiffs was achieved after hard fought and arm's-length negotiations between experienced counsel. Therefore, the settlement is fair and should be approved.

The first factor weighs in favor of approval. Based on estimated damages calculations, Plaintiffs' range of possible recovery was between $0 and $278,908.44 – representing overtime wages ($64,331.97) and spread-of-hours pay ($10,237.36), liquidated damages ($74,569.33), statutory penalties under NYLL § 195 ($105,700.00), and NYLL statutory interest ($23,069.78). The $102,000.00 settlement amount to Plaintiffs therefore provides 50% of Plaintiffs' unliquidated, base owed wages and statutory penalties. Based on the litigation risks discussed below, particularly taking into account Defendants' financial hardship stemming from the ongoing COVID-19 pandemic, and Defendants' potential inability to pay a greater settlement or award, the total settlement of $102,000.00 is a fair and reasonable result.

Fitapelli & Schaffer, LLP
April 21, 2021
Page 3 of 5

---

The second and third factors also favor approval. If the Parties were to continue litigation, the Parties would need to conduct full discovery, including depositions of all parties, including corporate representatives for Defendants. This would require further legal briefing from both sides. As such, further litigation would require significant time and expense. In addition, both sides face serious litigation risks relating to damages and liability. Unlike in many wage and hour cases, records in this case are in dispute, as there are differing records provided by Plaintiffs and Defendants, and each Party contests the authenticity of the other Party's records. As such, it would require significant testimony from both parties to argue issues such as the actual number of hours worked, and the amount Defendants paid Plaintiffs as wages. As a result, while Plaintiffs believe they could establish liability based on their testimony, this would require significant time and prolonged litigation and Plaintiffs acknowledge the significant risk that they would not be able to prove entitlement to any unpaid wages, including unpaid overtime, if Defendants were able to show that their records showing no such entitlement to unpaid wages were complete and accurate, as Defendants believe they could do.

Moreover, this Agreement is significant given the risks of continued litigation – most notably, collectability. Defendants' financial position means that Plaintiff may have difficulty recovering or collecting more should he prevail on his claims at trial. Defendants have continually insisted on their inability to withstand a higher award due to financial hardships caused by the COVID-19 pandemic. As such, this weighs in favor of approval. *See Ramirez v. Da Marcella 51 Inc.*, No. 14 Civ. 8632 (VSB), 2016 WL 11568479, at *1 (S.D.N.Y. Feb. 3, 2017) (finding a settlement to be "fair and reasonable" in light of the defendant's "limited income and substantial debts").

The fourth and fifth factors also weigh in favor of approval. Plaintiff's counsel and Defendants' counsel have negotiated at arm's length, as evidenced from the length of the negotiation and litigation process, and both Parties' counsel have significant experience handling wage and hour claims. *See* **Ex. B**, F&S Qualifications. In addition, there is no evidence of fraud or collusion, as the Settlement amount represents a significant percentage of Plaintiffs' potential recovery – 50% of their estimated base owed wages and statutory penalties.

Finally, the agreement's provisions are identical to similar agreements which have previously been approved by courts in this circuit. The release provision in the agreement is a mutual general release, and each Plaintiff is no longer employed by Defendants. *See Strauss v. Little Fish Corporation*, No. 19 Civ. 10158 (LJL), 2020 WL 4041511, at *4-6 (S.D.N.Y. July 17, 2020) (finding that a mutual general release "permits the two parties, who have parties, who have evident hostility towards one another, to walk away from the relationship" where there no further employment relationship); *see also Lola v. Skadden, Arps, Meagher, Slate, & Flom LLP*, No. 13 Civ 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (finding that a mutual release "assuage[es] concerns that the waiver unfairly benefits only Defendants"): *Souza v. 65 St. Marks Bistro,* No. 15 Civ. 327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("[a] mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes").

Moreover, while the agreement contains a non-disparagement agreement, it is carefully tailored to allow Plaintiffs to make truthful statements about their experience litigating their case. Similar provisions are regularly approved within this Circuit. *See e.g. See Torres v. McGowan, No. 18 Civ. 6099 (RML)*, No. 18 Civ. 6099, 2020 WL 5369056, at *3 (E.D.N.Y. Sep. 8, 2020) (citing *Lazaro-Garcia v. Sengupta Food Services*, No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015)). In addition, the agreement contains a clause prohibiting future employment that is identical to clauses previously approved within this Circuit. *See Vargas Ortiz v. Three Star on First*, No. 19 Civ. 928 (OTW), 2019 WL 4013981, at *3 (S.D.N.Y. Aug. 26, 2019) (finding that an agreement that had a no future employment clause "lack[ed] certain objectionable provisions that court have found fatal in other proposed FLSA settlement").

Finally, as will be discussed below, F&S' requested attorneys' fees are not excessive or constitute more than a third contingency interest in the settlement. As a result, Plaintiffs respectfully request that the Court find that the settlement agreement is a "fair and reasonable" compromise of their claims against Defendants and approve the settlement.

## THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND COSTS

In accordance with Plaintiffs' professional services-contingency fee agreement with Plaintiffs' Counsel and the Consent to Join forms signed by Plaintiffs, the Agreement provides that Plaintiffs' Counsel will recover $44,390.93, equaling one-third of the settlement ($34,000.00) plus costs ($10,390.93). The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Millin in his retainer agreement, and a contingency fee of one-third is sufficient to account for the risks associated with representation. Plaintiffs' Counsel has worked without any compensation to date, and Plaintiffs' Counsel's fee has been wholly contingent upon the result achieved. *See Chauca v. Abitinos Pizza 49th Street Corp.*, No. 15 Civ. 6278 (BCM), 2016 WL 3647603, at *2 (S.D.N.Y. June 29, 2016) (stating that attorneys' fee awards of one third are generally accepted in the Southern District of New York); *Remirez v. Greenside Corporation*, No. 16 Civ. 726 (HBP), 2017 WL 880878 at *3 (stating that "[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit").

As illustrated in **Exhibit B**, through the date of this filing, Plaintiffs' Counsel has spent approximately 167.25 hours litigating and eventually settling this action for a lodestar of $43,733.75. The hours reported are reasonable for a case such as this and were compiled from contemporaneous time records maintained by each attorney participating in the case. Since November 2014, all of Plaintiffs' Counsel's cases have been taken on pure contingency, including all out-of-pocket costs and expenses. Thus, when Plaintiffs' Counsel spends time on contingency matters, they do so at a significant risk for the firm.

For example, in *Rios et al. v. Louya Corp. d/b/a Jacques Brasserie et al.*, No. 14 Civ. 6800 (GHW) (S.D.N.Y.), Plaintiffs' Counsel obtained a verdict of $1,044,512.62 after a five-day trial. However, due to the defendants' bankruptcy filings, plaintiffs and Plaintiffs' Counsel have recovered less than 2% percent of the damages and attorneys' fees and costs awarded to them by the court. Moreover, in Plaintiffs' Counsel's experience, wage and hour cases are

inherently high-disk due to often unexpected closings and collection issues. Further illustrating the risks, three New York businesses that Plaintiffs' Counsel sued for wage issues have closed– Artisanal Bistro, Koi-Soho, and Petrossian. This highlights the risks associated with wage and hour matters and illustrates that Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful.

As such, in reviewing Plaintiffs' Counsel's fees in this matter and the risks involved, it is clear that they are both fair and reasonable. Moreover, under the "lodestar" method, the Court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the [plaintiff] and then multiplies that figure by an appropriate hourly rate." *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Even under the "lodestar" method, Plaintiffs' Counsel's one-third fee award is more than reasonable, as they currently have a lodestar multiplier of approximately 0.78, based on fees of $43,733.75. *See Castagna v. Madison Square Garden, L.P.*, Case No. 09 Civ. 10211 (LTS) (HP), 2011 WL 2208614, at *10 (quoting *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts . . .").

Lastly, Plaintiffs' counsel expended $10,390.93 in litigation costs and expenses. *See* **Ex. B.** These costs are primarily comprised of the expenses of having a private mediation with Ruth Raisfeld ($5,000.00) and administering the FLSA collective notice ($4,468.24). These costs are commonly reimbursed by courts in this District. *See e.g., Chamoro v. 293 3rd Café Inc.*, No. 16 Civ. 339 (PAE), 2016 WL 57119799, at *4 (S.D.N.Y. Sept. 30, 2016); *Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc.*, No. 15 Civ. 5737, 2017 WL 5564892, at *3 (E.D.N.Y. Nov. 3, 2017) (holding that court filing fees, process servers, transcripts, travel, and other litigation costs are generally recoverable if they are necessary for the representation of the client), report and recommendation adopted, 2017 WL 5564593 (E.D.N.Y. Nov. 18, 2017). As such, Plaintiff's Counsels' attorneys' fees are fair and reasonable and should be approved by the court.

\*   \*   \*

For the above reasons Plaintiff respectfully requests that the Court approve the attached Settlement Agreement.

We thank the Court for its time and consideration.

Respectfully submitted,

Frank J. Mazzaferro

CC:   Defendants' Counsel (via ECF)

1190479/57793039v.1